**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ELDER GEOVANY SABILLON-
UMANA, a/k/a Elder Umana, a/k/a
Pablo Casillas,

Defendant-Appellant.

No. 15-1110
(D.C. No. 1:12-CR-00113-WYD-3)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

Elder Geovany Sabillon-Umana pleaded guilty to money laundering and

conspiracy to distribute heroin and cocaine. He was sentenced to ninety-six

months' imprisonment, but we reversed and remanded that sentence in an earlier

---

[*] The parties have not requested oral argument, and upon examining
the briefs and appellate record, this panel has decided that oral argument would
not materially assist the determination of this appeal. *See* Fed. R. App. P.
34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without
oral argument.

This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

appeal. On remand, the district court resentenced Mr. Sabillon-Umana to eighty-four months' imprisonment. He now appeals, arguing that during resentencing proceedings, the government breached his plea agreement in two respects. Exercising our jurisdiction under 28 U.S.C. § 1291, we **affirm** the judgment of the district court.

## I

In 2011 and 2012, Mr. Sabillon-Umana distributed heroin and cocaine for a drug distribution organization ("DTO") run by a man known as "Gordo." R., Vol. I, at 21 (Plea Agreement, filed Oct. 23, 2012). Mr. Sabillon-Umana eventually entered a plea agreement under which he pleaded guilty to money laundering and conspiracy to distribute heroin and cocaine.

The plea agreement provided for a potential substantial-assistance downward departure. More specifically, the agreement provided that Mr. Sabillon-Umana "underst[ood] and agree[d]" that, if he desired the government's consideration of a potential 18 U.S.C. § 3353(e) and U.S.S.G. § 5K1.1 motion for downward departure, he would be "required to cooperate fully" by "providing **truthful** **and** **complete** information and testimony," appearing at required judicial proceedings, and agreeing to continuances of his sentencing hearing until his testimony had been provided. *Id.* at 14–15. The agreement also provided that the government expressly "reserve[d] the sole right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing," making clear that "in the

exercise of [the government's] discretion," the government "may make a [18 U.S.C. § 3353(e) and U.S.S.G. § 5K1.1] motion . . . reflecting that the defendant . . . provided substantial assistance." *Id.* at 15.

In exchange for Mr. Sabillon-Umana's substantial assistance, the agreement stated that the government "anticipate[d]" that a § 5K1.1 motion would ask the court "to impose a sentence as much as 40% below the bottom of the otherwise applicable Guidelines sentencing range," assuming that the judicial process allowed Mr. Sabillon-Umana to fully demonstrate his assistance to law enforcement. *Id.* Furthermore, the agreement reiterated in the "GUIDELINES PREDICTION" section that "the Government anticipate[d] asking the Court to reduce the defendant's sentence by up to 40% (measured from the bottom of the otherwise applicable Sentencing Guideline range) for substantial assistance." *Id.* at 43–44 (emphasis omitted).

Before Mr. Sabillon-Umana's initial sentencing hearing, the government filed a substantial-assistance motion in which it "request[ed] a departure from the otherwise applicable Sentencing Guidelines range and the ten year statutory minimum mandatory sentence for [the conspiracy charge], and from the otherwise applicable Sentencing Guidelines range for [the money laundering charge]." *Id.* at 94 (Gov't's § 5K1.1 Mot., filed June 27, 2013). In its motion, the government requested a sentence of 108 months' imprisonment; however, at the subsequent initial sentencing hearing, the government changed its recommendation to a range

of 96 to 120 months' imprisonment.[1] *See* Supp. R., Vol. II, at 165 (Tr. of Sentencing Hr'g, dated Aug. 15, 2013) (court stating that "[i]n the motion, . . . the Government asked that I grant the downward departure under 5K1.1, and 18 [U.S.C. §] 3553(e), and impose a sentence of 108 months. However, [the government], within the last 30 minutes, modified the motion to indicate that the Court had a sentencing range of 96 months, to, . . . 120 months"); *see also id.* at 159 (government amending the downward-departure request stating that Mr. Sabillon-Umana's debriefing testimony was "full of prevarication").[2]

At the initial sentencing hearing, the district court calculated a Guidelines range of 121 to 151 months' imprisonment, and observed that the statutory mandatory minimum sentence was 120 months' imprisonment. The court granted the government's substantial-assistance motion and sentenced Mr. Sabillon-Umana to ninety-six months' imprisonment, below the bottom of the Guidelines range of 121 months' imprisonment. We reversed and remanded that sentence on appeal. *See United States v. Sabillon-Umana*, 772 F.3d 1328, 1335 (10th Cir. 2014).

---

[1] The Presentence Investigation Report ("PSR") filed six days before the government's substantial-assistance motion calculated a Guidelines range of 240 to 262 months' imprisonment.

[2] As grounds for its downward-departure request, the government stated in its motion that Mr. Sabillon-Umana "ha[d] appeared and met to be debriefed with staff of the office of the United States Attorney, Special Agents, and Task Force Officers," and that he "ha[d] indicated he would testify to the best of his ability at trial if called upon to do so." R., Vol. I, at 94.

During resentencing proceedings on remand, the government did not request a forty-percent downward departure from the bottom of the Guidelines range. Instead, in a "Statement Concerning [the] Re-Sentencing of [Mr. Sabillon-Umana]" filed before the resentencing hearing, R., Vol. I, at 104 (filed Mar. 3, 2015), the government recommended a substantial-assistance departure to a range of 96 to 120 months (the same recommendation it had made at the initial sentencing hearing), noting that "[a] 96 month term of imprisonment would represent a downward departure of 20% from the 120 month statutory minimum mandatory sentence,"[3] *id.* at 114. In its pre-hearing Statement, the government made clear that Mr. Sabillon-Umana's "5K1.1 debriefing was difficult" because "he generally limited his remarks and went no further than the information already disclosed in discovery he had been provided with in the case, and his utility as a witness would have been hampered by his unwillingness to admit the extent and nature of his involvement in narcotics trafficking." *Id.* at 114–15.

At the subsequent resentencing hearing, the government clarified that it believed that Mr. Sabillon-Umana's sentence should be ninety-six months. The government explained that this determination was "based on the statutory mandatory, the thought . . . was to give a person a couple of years off, a couple of

---

[3]     The Addendum to the PSR filed during resentencing proceedings calculated a Guidelines range of 97 to 121 months' imprisonment, and noted that the statutory mandatory minimum sentence was 120 months' imprisonment. The government's low-end recommendation of ninety-six months did not represent a forty-percent departure from the bottom of that Guidelines range.

years benefit for allowing us to basically indicate for the fact that he did sign this plea agreement." R., Vol. III, at 30. The government continued that it "did not think of [the downward departure] as a percentage off of any particular number necessarily," and that instead, it "was thinking about one year or two years off of [the 120-month statutory mandatory minimum] sentence." *Id.* at 32. In addition, the government reiterated that Mr. Sabillon-Umana's "debriefing was pretty atrocious. It was very difficult, hard going. The defendant did a lot to minimize his own involvement in anything. And . . . he was untruthful, incomplete, with regard to other things." *Id.* at 30–31. In fact, based on Mr. Sabillon-Umana's debriefing testimony, the government stated that it had "seriously considered not giving him any 5K at all." *Id.* at 31.

At the resentencing hearing, the district court renewed its ruling granting the § 5K1.1 substantial-assistance motion that the government had filed in the initial sentencing proceedings. *Id.* at 28 (Tr. of Sentencing Hr'g, dated Mar. 18, 2015) ("[A]t the prior sentencing hearing I had granted the Government's 5K motion . . . . I will reaffirm the granting of that motion for purposes of this resentencing so that there's no ambiguity about that."). Accordingly, the court stated that it would "depart downward from the guideline range and . . . impose a sentence below the minimum sentence required by statute [of 120 months]." *Id.* at 64. The court calculated a Guidelines range of 97 to 121 months' imprisonment. Then, it departed downward to a sentence of eighty-four months' imprisonment.

Not only did the plea agreement provide for a potential substantial-assistance downward departure, but it also provided for a potential minor-role decrease. Specifically, the agreement stated: "the Government submits there should be a two level decrease for [playing a] minor role in the offense if the Court takes a broad view of the GORDO DTO conspiracy because the defendant [wa]s a subordinate in relation to . . . GORDO, the activity of the conspiracy was extensive, and the activity involved more than 10 persons." R., Vol. I, at 41.

During the initial sentencing proceedings, however, the PSR did not apply a minor-role decrease in calculating Mr. Sabillon-Umana's offense level. The PSR explained:

> the defendant's role was more than an "average participant" in the organization. The case agent informed that the defendant was [Gordo's] "right hand man." The factual basis of the plea agreement notes that defendant lent "managerial assistance to [Gordo]." Furthermore, he was entrusted with the wire transfer of $44,000, which he transferred to his Honduran bank account. On occasion, the defendant sourced the Gordo DTO with cocaine drug supplies obtained from another DTO. His contributions to the DTO were integral to the success of the organization.

R., Vol. II, at 62. Similarly, at the initial sentencing hearing, the government argued that the minor-role decrease was not appropriate "[i]f you look at what happened here in Colorado, which is how the probation officers looked at it," instead of taking a "very telescopic, very far away view of [the conspiracy]." Supp. R., Vol. II, at 138. In line with both the government's recommendation and the PSR's calculation, at the initial sentencing hearing, the district court used the

-7-

PSR to calculate the offense level without the minor-role reduction.  However, at resentencing, the minor-role decrease was not discussed at all, and the court did not apply it in calculating Mr. Sabillon-Umana's offense level.  *See* R., Vol. III, at 63 (noting that "there are no adjustments for role in the offense").

This appeal followed.

## II

Mr. Sabillon-Umana argues that during resentencing proceedings, the government breached the plea agreement by: (1) not recommending a downward departure from the bottom of the Guidelines range in its substantial-assistance motion, and (2) not arguing for a minor-role decrease in offense level.  We address each of these claims in turn, and affirm.

## A

Mr. Sabillon-Umana first argues that the government breached the plea agreement by not seeking a substantial-assistance departure calculated from the bottom of the Guidelines range.  Below, we conclude that the government did not breach the plea agreement with regard to its substantial-assistance departure recommendation.

## 1

As a preliminary matter, the parties disagree about the applicable standard of review.  Mr. Sabillon-Umana argues that we should review de novo whether the government breached the plea agreement.  *See, e.g.*, *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008).  The government

-8-

responds that we should review only for plain error because, although Mr. Sabillon-Umana argued below that "the bottom of the guidelines range was the proper starting point for the departure . . . he never claimed that the government breached the plea agreement." Aplee.'s Br. at 8.

We sidestep this dispute concerning the proper standard of review because we conclude that even applying de novo review, Mr. Sabillon-Umana cannot prevail on the merits.

**2**

Even applying de novo review, Mr. Sabillon-Umana cannot prevail on the merits. Under the plain language of the plea agreement, the government did not unequivocally promise to recommend a departure of a certain percentage below the bottom of the Guidelines. Instead, the government retained discretion to evaluate Mr. Sabillon-Umana's cooperation, and that evaluation ultimately resulted in a less favorable downward-departure recommendation.

Mr. Sabillon-Umana argues that "the government breached its promise to request a percentage reduction and departure based on the bottom of the applicable guidelines' range." Aplt.'s Opening Br. at 8 (capitalization and emphasis altered). He points to the plea agreement's language that "the Government anticipates asking the Court to reduce the Defendant's sentence by up to 40% (measured from the bottom of the otherwise applicable Sentencing Guideline range) for substantial assistance." R., Vol. I, at 44. Mr. Sabillon-Umana argues that despite this language, the government did not argue for a

downward departure from the bottom of the Guidelines range, but instead asked for "a couple of years off of the statutory mandatory minimum sentence" of 120 months. Aplt.'s Opening Br. at 10 (citing R., Vol. III, at 30 (stating that the government's recommended downward departure was "based on the statutory mandatory, the thought . . . was to give a person a couple of years off, a couple of years benefit for allowing us to basically indicate for the fact that he did sign this plea agreement")). In Mr. Sabillon-Umana's view, "[t]he government's failure to recommend a sentence where the basis of the substantial assistance departure was calculated from the bottom of the Guidelines' range breached the plea agreement's plain language" because "pursuant to . . . the plea agreement, the government was required to recommend" such a departure. Aplt.'s Opening Br. at 10.

Mr. Sabillon-Umana's brief, however, cites little in the way of legal authority to support his position. Besides noting that 18 U.S.C. § 3553(e) allows a departure below the statutory minimum, he cites only to *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007).[4] In *VanDam*, we stated that:

> General principles of contract law define the content and scope of the government's obligations under a plea agreement.

---

[4] The only other legal authority cited in this section of Mr. Sabillon-Umana's brief is *United States v. Mendoza-Haro*, 595 F. App'x 829, 833 (10th Cir. 2014), which Mr. Sabillon-Umana cites for the proposition that "a sentence reduced under § 3553(e) for substantial assistance cannot be further reduced based on the § 3553(a) factors." Aplt.'s Opening Br. at 10. Mr. Sabillon-Umana relies on *Mendoza-Haro* to argue that the reduction he seeks "is not prohibited double-dipping" under § 3553(a) and (e). *Id.* Prohibited double-dipping, however, is not at issue.

> We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea. We construe all ambiguities against the government, to the extent it is the drafting party. We evaluate the record as a whole to ascertain whether the government complied with its promise.

493 F.3d at 1199 (citations omitted). In that case, we held that the government had breached a plea agreement because its "unambiguous language" required the government to recommend a sentence "at the low end of the guideline range found applicable," but the government did not do so. *Id.* at 1199 (quoting the record). Instead, the government recommended a sentence at the low end of the range that *it* believed was applicable, even after the court held otherwise. Thus, we concluded that the government had "directly contravened" its obligations under the plea agreement. *Id.* at 1200.

In the present case, however, Mr. Sabillon-Umana cannot point to any unambiguous language in the plea agreement that the government directly contravened. As the government points out, the relevant portions of the plea agreement state only that the government "anticipate[d]" making a substantial-assistance motion recommending a forty-percent downward departure from the bottom of the Guidelines range. R., Vol. I, at 15; *id.* at 44. Moreover, the agreement expressly conditioned any substantial-assistance motion on the government's assessment of Mr. Sabillon-Umana's cooperation. *See id.* at 15 (stating that the defendant "underst[ood] and agree[d]" that, in order to secure a substantial-assistance departure recommendation, he would be required to

-11-

"cooperate fully" by, *inter alia*, "providing **<u>truthful</u> <u>and</u> <u>complete</u>** information and testimony"); *id.* (stating that the government "reserve[d] the sole right to evaluate the nature and extent of the defendant's cooperation," and that, "in the exercise of its discretion," it "may make a motion . . . reflecting that the defendant . . . provided substantial assistance"). Critically, the government later determined that Mr. Sabillon-Umana had provided little assistance to law enforcement. *See, e.g.*, *id.* at 114–15 (stating that Mr. Sabillon-Umana's "5K1.1 debriefing was difficult" because "he generally limited his remarks and went no further than the information already disclosed in discovery he had been provided with in the case, and his utility as a witness would have been hampered by his unwillingness to admit the extent and nature of his involvement in narcotics trafficking").

Thus, there is no reason to conclude that the government failed to fulfill any promise in the plea agreement or contravened the defendant's reasonable understanding of any promise. *See VanDam*, 493 F.3d at 1199–1200. We therefore reject Mr. Sabillon-Umana's first argument.[5]

---

[5] Mr. Sabillon-Umana also briefly argues that the district court "was confused" about whether it could "depart downward from the Guideline range," and that, for this reason, we should "clarify what happens" when a "plea agreement . . . *requires*" a substantial-assistance departure below the bottom of a Guidelines range. Aplt.'s Opening Br. at 12 (emphasis added). However, we need not address this issue because the plea agreement contained no such requirement in this case; it merely described what the government *anticipated* it would do, assuming Mr. Sabillon-Umana fully cooperated.

-12-

**B**

In his second claim, Mr. Sabillon-Umana argues that "the government breached the plea agreement by not recommending a two-level reduction for Mr. Sabillon's minor role in the conspiracy." Aplt.'s Opening Br. at 13 (capitalization and emphasis altered). Applying plain-error review, we conclude that the district court did not err, much less plainly, in failing to find a breach because there was no binding obligation for the government to recommend the minor-role downward adjustment.

**1**

The parties again disagree about the applicable standard of review. Mr. Sabillon-Umana acknowledges that he did not make an objection concerning this issue at the resentencing hearing, but maintains that de novo review applies regardless of whether the issue was preserved. *See* Aplt.'s Opening Br. at 13 (citing *VanDam*, 493 F.3d at 1199 ("This Court reviews de novo the question of whether the government has breached a plea agreement, even when the defendant fails to preserve this objection below.")). However, as the government points out, *VanDam*'s standard-of-review holding is no longer good law; it was overturned by the Supreme Court's subsequent decision in *Puckett v. United States*, 556 U.S. 129, 133 (2009). And, since *Puckett*, we have applied a plain-error standard in the breach-of-plea-agreement context. *See United States v. Mendoza*, 698 F.3d 1303, 1309 (10th Cir. 2012); *see also United States v. Willis*, 607 F. App'x 788, 790–91 (10th Cir. 2015).

Mr. Sabillon-Umana's reply brief does not address this point, nor does it argue that the district court plainly erred. Accordingly, we could determine that Mr. Sabillon-Umana has waived any argument for plain error, and decline to reach the merits of this issue at all. *See, e.g.*, *United States v. Ibarra-Diaz*, 805 F.3d 908, 916 n.3 (10th Cir. 2015); *United States v. Zander*, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011). Nevertheless, we exercise our discretion to reach the merits of Mr. Sabillon-Umana's minor-role argument, and review for plain error. *See Ibarra-Diaz*, 805 F.3d at 916 n.3.

## 2

Under plain-error review, Mr. Sabillon-Umana must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Mendoza*, 698 F.3d at 1309 (quoting *United States v. Weiss*, 620 F.3d 1263, 1274 (10th Cir. 2010)). Mr. Sabillon-Umana has failed, however, to demonstrate any error, much less one that is plain, and we therefore resolve this issue under the first prong of the plain-error test.

Mr. Sabillon-Umana argues that the government failed to seek a two-level reduction for his minor role in the conspiracy, despite having promised to do so in the plea agreement. *See* Aplt.'s Opening Br. at 13 (citing R., Vol. I, at 41 (stating that "the Government submits there should be a two level decrease for [a] minor role in the offense")). His brief, however, ignores other pertinent language

in the plea agreement. Read in full, the relevant provision of the plea agreement states: "the Government submits there should be a two level decrease for [a] minor role in the offense *if the Court takes a broad view of the GORDO DTO conspiracy* because the defendant [wa]s a subordinate in relation to . . . GORDO, the activity of the conspiracy was extensive, and the activity involved more than 10 persons." R., Vol. I, at 41 (emphasis added). As this language makes clear, the government's promise regarding the minor-role adjustment was conditioned on the court taking a broad view of the conspiracy.

At both initial sentencing and resentencing, the district court did not take a broad view of the conspiracy. More specifically, the court held Mr. Sabillon-Umana accountable for only his direct drug involvement—not the larger conspiracy. *See, e.g.*, Supp. R., Vol. II, at 131 (at initial sentencing hearing, court stating that "it would be just wrong . . . to attribute all of the drug quantities that are associated with the conspiracy with Mr. [Sabillon-]Umana"); R., Vol. III, at 59–60 (at resentencing, court stating that, "I reject as not supported by the facts in this case the Government's assertion that all of the drugs that were a part of the conspiracy in this case should be attributable to this defendant. I just don't believe that there is a factual basis for me to make that finding."). The government argues that as a consequence, it was not required to seek a minor-role reduction under the plain language of the plea agreement. Mr. Sabillon-Umana offers no explanation as to why that is incorrect. Given the view that the court took of the conspiracy, we conclude that the government was under no obligation

-15-

to request a minor-role reduction. Thus, we hold that the district court did not err, much less plainly, in failing to find that the government breached the plea agreement.

## III

For the foregoing reasons, we **AFFIRM** the district court's judgment.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge