**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**October 27, 2006**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KELVIN B. SCOTT, JR.,

    Defendant - Appellant.

No. 05-6082

**ORDER DENYING PETITION FOR PANEL REHEARING**

Before **KELLY**, Circuit Judge, **HOLLOWAY** and **EBEL**, Senior Circuit Judges.

The United States has filed a petition for panel rehearing. The motion is denied. The petition has, however, brought to the court's attention two errors in the published opinion which the court will correct. Accordingly, the attached opinion is to be filed and substituted for the opinion originally filed on July 31, 2006. IT IS SO ORDERED.

Entered for the court,

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**July 31, 2006**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

No. 05-6082

KELVIN B. SCOTT, JR.,

  Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 04-CR-75-F)**

---

Sanford C. Coats, Assistant United States Attorney (and John C. Richter, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee

David Autry, Oklahoma City, Oklahoma, for Defendant - Appellant

---

Before **KELLY**, Circuit Judge, **HOLLOWAY** and **EBEL**, Senior Circuit Judges.

---

**HOLLOWAY**, Senior Circuit Judge.

---

Defendant-Appellant Kelvin B. Scott, Jr., appeals his sentence imposed following a plea of guilty to one count of transportation of a juvenile in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2423(a).

Following the sentencing hearing, the district court sentenced Mr. Scott to 120 months' imprisonment and three years' supervised release. On appeal, Mr. Scott contends that the district court erred in: (1) retroactively applying *Booker v. United States*, 125 S.Ct. 738 (2005), in violation of *ex post facto* principles; in (2) applying vulnerable victim and leadership sentencing enhancements under U.S.S.G. §§ 3A1.1(b)(1), 3B1.1(c); and in (3) not analyzing the applicability of these sentencing enhancements under a reasonable doubt standard. He also contends that (4) the district court's sentence of 120 months is unreasonable under *Booker* and 18 U.S.C. § 3553(a); and (5) the government breached the plea agreement and waived any arguments in support of a sentencing increase due to its failure to object to the presentence report (PSR).

We have jurisdiction granted by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We are convinced that the government did breach the plea agreement with Defendant-Appellant and accordingly we must reverse and remand for resentencing.

# I

As the parties anticipated in the plea agreement, the base offense level was determined to be 19. The defense admitted that two increases were applicable – two levels because the victim was between ages 12 and 16, and four levels because fraud had been used to entice the victim into prostitution. The government agreed to a two

- 2 -

level decrease for acceptance of responsibility, resulting in an offense level of 23. That offense level, with defendant's criminal history category of I, resulted in a presumptive guidelines range of 46 to 57 months.

When the presentence report was issued, it adopted these admissions and agreements of the parties. The report concluded that the sentencing range was as anticipated by the parties, 46 to 57 months, because the probation office found no information to warrant any additional adjustments, and no evidence suggesting that a departure in either way would be appropriate. The government did not object to the report, and defendant's only objections were minor. One of defendant's objections was sustained by the court. None of them is at issue now.

The district judge was clearly unsatisfied, and he issued three orders before the sentencing hearing. The first order alerted the parties that the court wanted to consider the possibility of offense level increases for a vulnerable victim and for a leadership role in the offense. The government responded by filing a paper styled "Government's Motion For Upward Departure and Sentencing Memorandum." In this filing, the government advocated offense level increases on the bases suggested by the court – that the victim was unusually vulnerable and that defendant had played a leadership role in the offense – and also argued for an upward departure from the sentencing range resulting from application of the Guidelines. The court's next order came right after *Booker* and invited briefing on that decision, as well as discussing

the state of the record and some relevant court decisions on the two adjustments that the judge had brought up in the earlier order. The third of these orders was very brief and merely informed the parties that the judge was considering exercising his newly granted discretion to impose a sentence longer than that which had been calculated under the advisory guidelines.

At sentencing, the court rejected defendant's argument that the *Booker* remedy (Justice Breyer's opinion making the guidelines advisory only) could not be applied to him because of due process *ex post facto* considerations. The court also held that the facts supporting sentence enhancements need only be proved by a preponderance of the evidence. The government produced testimony from the case agent regarding the offense conduct. The judge then found that the victim was especially vulnerable and that another prostitute had participated in the offense conduct. The latter finding was a necessary predicate for the court's finding that defendant had played a leadership role in the offense. These findings increased the advisory guidelines range from 46-57 months to the range of 70-87 months. The court rejected the government's argument for an upward departure under U.S.S.G. § 5K2.4, finding that the fraud used to inveigle the victim into prostitution had already been taken into account in an admitted offense characteristic.

Even though the judge rejected the government's argument for upward departure under the guidelines, he exercised his discretion under the now advisory

guidelines scheme to impose a sentence of 120 months, 38% higher than the top of the adjusted guidelines range.

## II

### A

As we demonstrate below, upon consideration of the record of the proceedings concerning the plea agreement, we are convinced that the government breached the plea agreement. It is well settled that we must interpret the agreement according to the defendant's reasonable understanding of its terms. *See, e.g., United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990); *United States v. Greenwood*, 812 F.2d 632, 635 (10th Cir. 1987). The plea agreement provided that based upon "the information that is known to the parties on the date that this agreement is executed, the positions they expect to take at sentencing with respect to the United States Sentencing Guidelines will include" that: (1) the offense occurred before April 30, 2003; (2) the offense involved a commercial sex act and the use of coercion; (3) the victim's age was between 12 and 16 years; and (4) the defendant should receive a 2 level downward adjustment for acceptance of responsibility. App. of Defendant-Appellant at 69-70.

Defendant contends that the agreement was breached because the government's agreement to these terms clearly implied that the government would *not* argue for

other sentence enhancing factors, or at least that such an inference should be drawn because that was his reasonable expectation from the agreement. We agree that this is the plainly reasonable interpretation of the agreement.

**B**

Despite its obligation not to do so, the government did argue for additional enhancements and therefore clearly breached the agreement. Thus, in the "Government's Motion for Upward Departure and Sentencing Memorandum," App. of Defendant-Appellant at 125-134, the government asserted that the especially vulnerable victim enhancement "should be applied, and defendant's sentence should be enhanced accordingly." *Id*. at 132. And the same submission said, as to the application of an enhancement for a leadership role in the offense, that the evidence "shows that defendant was a leader of a criminal enterprise under § 3B1.1(c)." *Id*. at 133. At the sentencing hearing, the prosecutor asserted that "the Court should adjust the defendant's points" to enhance the offense level for the victim's vulnerability and that the offense level also "should be adjusted upwardly" for a leadership role in the offense. (Transcript of Sentencing Proceedings of March 4, 2005 at 69-70.)

The government did reserve the right in the plea agreement to take other positions *if* new facts were developed. But that did not happen, and the government

-6-

on appeal does not so contend. Instead, the government argued below in favor of the enhancements that the district judge had suggested *sua sponte* – especially vulnerable victim and leadership role in the offense – and even went beyond that to argue for an upward departure, an argument that the district judge rejected. On appeal, despite the fact that no new facts were developed, the government expressly admits that the prosecutor *did argue* additional positions for the enhancements at the sentencing hearing. Brief of Plaintiff-Appellee at 43 ("The fact that the government took additional positions at the sentencing stage of these proceedings in no way breached the plea agreement.").[1] *See also id.* at 47.

The plea agreement was clearly breached and the sentence before us should not be affirmed. The fundamental and dispositive principle was stated by Chief Justice Burger: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled." Santobello v. New York*, 404 U.S. 257, 262 (1971) (emphasis added). Further, in fulfilling its promise, the government "cannot rely upon a 'rigidly literal construction of the language' of the agreement . . . ." *United*

---

[1]The government asserts that it was only precluded from making arguments that would conflict with the express provisions of the plea agreement. This position is contrary to the teaching of *Hand* and *Greenwood* that plea agreements must be construed consistently with the defendant's reasonable understanding of the agreement's terms. As noted, the government "cannot rely upon a 'rigidly literal construction of the language' of the agreement . . . ." *Hand*, 913 F.2d at 856.

*States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990) (quoting *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir. 1989)).[2]

### III

### A

We turn to arguments and authorities which are offered as justifications for the government's conduct. The government has argued that its absence of objections to the PSR did not preclude the government from providing the district judge with applicable facts and law, nor was the government barred from arguing for certain enhancements not in the initial PSR. See Brief of Plaintiff-Appellee at 47. However, as noted the government merely reserved the right in the plea agreement to take other positions if new facts were developed, and that did *not* happen. App. of Defendant-Appellant at 70.[3]

---

[2] We do not suggest that the government should have ignored the order from the district court for briefing on the additional enhancements. However, the government could have responded without breaching either the plea agreement or its duty of candor to the court by providing accurate answers to the court's queries and explaining its obligations under the plea agreement without expressly arguing for the upward enhancements.

[3] The relevant portion of the plea agreement states:

However, subject to the terms and conditions of this plea agreement (particularly the conditions concerning [U.S.S.G.] § 1B1.8 set out in paragraph 11), the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered during the course of the United States'

(continued...)

We note also that the district judge at the sentencing proceedings of March 4, 2005, stated that the purported default by the government in not objecting to the PSR "applies only to the factual narrative in the PSR . . . which does not apply with respect to the probation officer's conclusion as to the applicability of possible enhancements." (App. of Defendant-Appellant at 180.)  In other words, the district judge said that the government could respond to the judge's request because he was *not* contemplating any supplementation of the facts underlying the decisions to be made.  The judge had explicitly asked for advocacy.  On appeal the government repeats what the district judge said at the sentencing hearing.  Moreover the government asserts that it was not precluded from arguing for the additional enhancements:

> [T]he government's absence of objections did not preclude it from providing the district court with the applicable facts and law, *and arguing for sentencing enhancements not contained in the original PSR.*

Brief of Plaintiff-Appellee at 47 (emphasis added).  Thus, the government admits arguing for the additional sentencing enhancements which was a clear violation of the implicit obligation of the government not to do so.

We are also persuaded by the analysis in *United States v. Allen*, 434 F.3d, 1166

---

[3](...continued)
investigation subsequent to the signing of this agreement or arises from sources independent of the United States, including the U.S. Probation Office.
*Id.*

(9th Cir. 2006), which is quite similar to *Hand* in the circumstances and disposition of the issue of whether the prosecution breached the plea agreement. As in *Hand*, the prosecutor in *Allen* scrupulously abided by the terms of the agreement, supplying factual information to the court on request, but adhering to her agreement to recommend a certain offense level in spite of additional facts which would have supported a higher offense level. The Ninth Circuit cautioned that an attempt to influence the sentencing judge to impose a higher sentence than the government had agreed to recommend in a plea agreement would have violated the agreement. *See also United States v. Ahn*, 231 F.3d 26 (D.C. Cir. 2000), where the prosecutor was careful not to argue for an enhancement in responding to the district court's request for information.

In sum, we are persuaded that under the principles of *Santobello* and its progeny we must reverse and remand for resentencing since the fault rests on the government. *See Santobello*, 404 U.S. at 263.

Since we must reverse on this basis, we do not reach other issues..

**IT IS SO ORDERED**.