FILED
United States Court of Appeals
Tenth Circuit

July 29, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

LAVERTISE ANTWION CUDJOE,

        Defendant - Appellant.

No. 07-6166

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CR-O6-248-3-L)**

---

Mark Henricksen, Henricksen & Henricksen Lawyers, Inc., Oklahoma City, Oklahoma, for Defendant-Appellant.

Leslie M. Maye, Assistant United States Attorney (John C. Richter, United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. Introduction

Pursuant to a plea agreement, Lavertise Antwion Cudjoe, a.k.a. "Boonie," pleaded guilty to (1) conspiracy to possess with intent to distribute and distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; and (2) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). As part of the plea agreement, Cudjoe stated he would ask the district court for a total sentence of 360 months' imprisonment and the government agreed to not object, so long as Cudjoe "stay[ed] factually accurate." On appeal, Cudjoe argues the government breached the plea agreement by advocating for sentencing enhancements and a sentence in excess of thirty years. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we **reverse** Cudjoe's sentence and **remand** for resentencing.

## II. Background

The Federal Bureau of Investigations ("FBI") began investigating an Oklahoma City drug-trafficking operation in June of 2004. Through this investigation, the FBI learned that Cudjoe was a member of a gang known as the Walnut Gangster Crips. Members of the gang acquired multiple kilograms of cocaine from sources in California and Texas to manufacture cocaine base ("crack") for redistribution in the Oklahoma City area.

On October 4, 2006, a grand jury returned an eighty-five count indictment charging Cudjoe, and numerous co-conspirators, with drug possession, drug

distribution, and firearm violations. Cudjoe was charged in six of the eighty-five counts. He pleaded guilty to two counts: (1) conspiracy to possess with intent to distribute and distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; and (2) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

As part of Cudjoe's plea agreement, the parties incorporated an e-mail sent from the Assistant United States Attorney ("AUSA") to Cudjoe's counsel. The e-mail stated, "If you want to try to convince [the district court] to sentence Boonie to 30 years, I will not object. I can't join in on the recommendation, but I won't object—providing everything stays factually accurate with him." The government, however, retained the right to argue for a higher guideline range. The plea agreement stated the government, at sentencing, would take the position that "(1) in excess of 30 kilograms of cocaine base (crack) [is] attributable to this defendant; (2) defendant should be assigned a leadership role in the offense pursuant to U.S.S.G. § 3B1.1; and (3) defendant should receive [an] obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.2." The agreement also provided that "[a]part from any expressed agreements and stipulations, the parties reserve the right to advocate for, and present evidence relevant to, other guideline adjustments and sentencing factors for consideration by the U.S. Probation Office and the Court." Further, the agreement states:

It is the expectation of the United States that its criminal investigation of defendant's conduct . . . will cease upon the signing of the plea agreement. However, subject to the terms and conditions of this plea agreement . . . , the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered during the course of the United States' investigation subsequent to the signing of this agreement or arises from sources independent of the United States, including the U.S. Probation Office.

At Cudjoe's change of plea hearing, the parties discussed their understanding of the contours of the plea agreement:

AUSA: Mr. Wells[, Cudjoe's attorney,] has indicated to me that he is going to request a particular sentence for the defendant. I have informed him in no uncertain terms that I cannot and will not join him in that request but I would stand mute and let the facts and circumstances that the court is aware of and will be made aware of through the presentence report speak for themselves.

THE COURT: . . . . Mr. Wells, is that your understanding of what Mr. Cudjoe and the government have agreed to?

MR. WELLS: Yes, sir . . . . I have indicated to [the AUSA] what I will be asking the court and [she] has said she will stand mute. Mr. Cudjoe does understand that this court has the full authority to do what it deems is the appropriate thing to do. That is just the position I will take and the basic nonposition that [the AUSA] will take. Mr. Cudjoe understands that the court is not bound by either position.

Cudjoe then stipulated that thirty kilograms of crack were attributable to him, for purposes of the sentencing guidelines. He explained, however, that he

was not stipulating to either the leadership or obstruction of justice enhancements. Specifically, Wells stated "if the presentence report has those [enhancements] in there, there is evidence that would support those two items and, if that is the case, it would be my intention not to object to those probably at this time." The court asked Wells to clarify to which provisions Cudjoe was stipulating. Wells responded:

> We have not stipulated to [the leadership and obstruction of justice enhancements] but also you will notice in [the AUSA's] e-mail to me that she states that if a factual situation—or if Mr. Cudjoe denies what the truth is, then she would speak. And so I do believe that there is not the stipulation to [the leadership and obstruction of justice enhancements]. There is the stipulation to [possessing in excess of thirty kilograms of crack] because that is under the conspiracy count that we have stipulated to that.

The U.S. Probation office prepared Cudjoe's presentence report ("PSR") and assigned a base offense level of thirty-eight for his conspiracy conviction. The PSR applied a four-level enhancement for being a leader and organizer in the conspiracy, pursuant to U.S.S.G. § 3B1.1(a); a two-level enhancement for obstruction of justice for brandishing a firearm during his pursuit by police officers, pursuant to U.S.S.G. § 3C1.2; and a two-level enhancement for obstruction of justice for communicating threats through a third party to a witness, pursuant to U.S.S.G. § 3C1.1, an enhancement that was not addressed in the plea agreement. The resulting offense level was forty-six. Cudjoe's criminal

history category was III, resulting in an advisory guideline range of life imprisonment.

Cudjoe filed several objections to the PSR, including objections to both obstruction of justice enhancements and to the leadership enhancement. Specifically, he argued the PSR relied on unreliable hearsay to assess the two-point obstruction of justice enhancement for threatening a witness and that his actions did not fit within the definition of an organizer or leader to satisfy the leadership enhancement. Cudjoe also objected to the two-point obstruction of justice enhancement based on threatening a police officer with a gun.

The government called five witnesses at Cudjoe's sentencing hearing to support the enhancements it sought. Following argument by the parties, the court granted Cudjoe's objection to the obstruction of justice enhancement based on alleged threats, ruling the government had failed to meet its burden of showing the threats originated from Cudjoe. It applied, however, the obstruction of justice enhancement based on pointing a gun at police officers and the leadership enhancement. The court also applied a two-point reduction for acceptance of responsibility. Cudjoe's adjusted offense level was forty-two with a criminal history category of III, resulting in an advisory guideline range of 360 months' imprisonment to life imprisonment. After ruling on the objections, the government stated to the court:

Your Honor, I believe that the Court has heard the length and breadth both during the course of the numerous motions that were filed on behalf of the defendant, witnesses were called by the government during those proceedings as well as witnesses today of exactly the nature and character of this defendant. He has clearly had experience with the judicial system before and believed . . . that he'd get eight years out of this. While 360 months to life may seem extensive, the government certainly believes that given his history, given his character, given his choices, and given his drug dealing, gun carrying and firing personality, that this Court should strongly consider a penalty that will protect society from him in any and all future events.

Defense counsel, in his closing remarks, requested a thirty-year sentence[1] and reminded the court of the e-mail incorporated into the plea agreement:

[In coming to an agreement] we discussed various things and finally the [] thing that we came up with is that if Mr. Cudjoe would plead to [] the conspiracy count and the 924(c), at the time of sentencing, if Mr. Cudjoe didn't lie, and I would request, not that the Court is bound, but I would request a sentence of thirty years, and . . . depending on how everything is stacked out and [the AUSA] would not object—she wouldn't agree, but she would not object.

The government responded, "Your Honor, I'm sorry. I didn't say that. The response, there's no objection. I would stand mute if everything was factually accurate and there's a great difference in my way of thinking to objection to do it." The court then sentenced Cudjoe to 360 months' imprisonment for the conspiracy conviction and sixty months' imprisonment for the § 924(c)

_____

[1]Cudjoe sought a twenty-five year sentence for violating 21 U.S.C. §§ 841(b)(1)(A) and 846 in addition to the five year mandatory minimum for violating 18 U.S.C. § 924(c)(1)(A)(ii).

conviction, to be served consecutively. The resulting sentence is 420 months' imprisonment.

## III. Discussion

On appeal, Cudjoe argues the government breached the plea agreement by arguing for the obstruction of justice and leadership enhancements and advocating for a sentence in excess of thirty years. The government, on the other hand, contends that when Cudjoe objected to the PSR he placed facts in dispute, thereby releasing the government from its obligation to stand mute. We interpret a plea agreement relying on "general principles of contract law, and therefore look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of the promise at the time of the entry of the guilty plea." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212-13 (10th Cir. 2008) (citations and quotation omitted). "It is well settled that we must interpret the agreement according to the defendant's reasonable understanding of its terms," *United States v. Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006), and "construe any ambiguities against the government as the drafter of the agreement," *Rodriguez-Rivera*, 518 F.3d at 1213.

### A. Cudjoe's Alleged Breach of the Plea Agreement

As an initial matter, we must determine Cudjoe's reasonable understanding of the plea agreement. The e-mail, incorporated into the plea agreement, states the government will not object to a thirty-year sentence "providing everything

stays factually accurate with [Cudjoe]." After reviewing the record as a whole, we conclude that the parties understood staying "factually accurate" to mean Cudjoe would not make any factually inaccurate statements in his objections to the PSR or at sentencing. If Cudjoe lived up to his end of the bargain, the government, in turn, would stand mute on Cudjoe's request for a sentence of thirty years. Nothing in the plea agreement prohibited Cudjoe from making legal arguments in opposition to the sentencing enhancements sought by the government. We base this conclusion on the plea agreement and the parties' statements during the plea colloquy and at sentencing. The plea agreement expressly gives Cudjoe the right to "advocate for, and present evidence relevant to, [] guideline adjustments and sentencing factors." Thus, the agreement contemplated that Cudjoe could file objections to the PSR. The government would be released from its obligation to stand mute only if Cudjoe made factually inaccurate statements or was untruthful. During the plea colloquy, Wells explained this understanding: if Cudjoe "denies what the truth is" the government would be free to argue for a sentence in excess of thirty years. Again, during sentencing Wells described his understanding that the agreement was based on Cudjoe not lying about the facts. When taken together, it is clear that the parties contemplated Cudjoe could object to the PSR, but was prohibited from making factually inaccurate statements or arguments.

The government asserts it was permitted to advocate for a sentence in excess of thirty years because Cudjoe, by objecting to the PSR, made factually inaccurate statements. Notably, however, the government does not identify in its brief any particular statement on the part of Cudjoe that it asserts to be false. The government's argument is foreclosed by *United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003). In that case, the government affirmatively recommended a sentence at the upper end of the guideline range and sought an obstruction of justice enhancement contrary to its promises in the plea agreement to recommend a sentence at the low end of the guideline range and *not* to seek an obstruction of justice enhancement. *Id.* It took these positions claiming the defendant "had previously breached the Plea Agreement, thus vitiating the [a]greement." *Id.* We held:

> Under the law of this Circuit, if the pleadings reveal a factual dispute on the issue of breach of a plea agreement, the district court must hold a hearing to resolve the factual issues. In other words, the government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement.

*Id.* (quotation, citation, and alterations omitted). Where there is no factual dispute, "no hearing is necessary and the court may determine the issue of breach as a matter of law." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981). What may not occur, however, is for "the question of a defendant's breach . . . to be finally determined unilaterally by the government." *Id.*

-10-

In this case, the government's argument is entirely premised on Cudjoe's alleged breach of the plea agreement. The government never raised this alleged breach before the district court. Not surprisingly, the district court never determined Cudjoe breached the plea agreement. Thus, even if Cudjoe breached the plea agreement, until the district court so ruled, the government was not released from its promise. Therefore, we must determine if the government breached the plea agreement by (1) advocating for the sentencing enhancements; or (2) asking the court to sentence Cudjoe in a manner "that will protect society from him in any and all future events."

## B.      Advocating for Sentencing Enhancements

Cudjoe's argument that the government's introduction of evidence at the sentencing hearing, in support of the sentencing enhancements, breached the plea agreement is without merit. The plea agreement specifically provided that the government intended to advocate for both the leadership enhancement, pursuant to U.S.S.G. § 3B1.1(a), and the obstruction of justice enhancement for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2. The third enhancement, obstruction of justice based on threats to a witness, pursuant to § 3C1.1, was not specifically mentioned in the plea agreement. The agreement, however, expressly reserves the government's right "to advocate for, and present evidence relevant to, other guideline adjustments and sentencing factors for consideration by the U.S. Probation Office and the Court."

This case stands in contrast to *Scott*, in which we held the government breached its plea agreement by advocating for additional sentencing enhancements. 469 F.3d at 1338-39. In that case, the plea agreement listed the positions the government expected to take at sentencing, including factors to be used in sentencing. *Id.* at 1338. The defendant argued the government breached the plea agreement because a reasonable interpretation was that the government would not argue for other sentencing factors. *Id.* Although the plea agreement contained a provision reserving the right to "take other positions *if* new facts were developed," the court concluded no new facts had indeed been developed. *Id.* Cudjoe's plea agreement, however, appears to reserve the right to advocate for other "guideline adjustments and sentencing factors" and does not condition this right on the development of new facts. Even if the plea agreement was construed to condition the right on the development of new facts, this condition, in fact, occurred.[2] During the course of preparing the PSR, the Probation Office discovered evidence that a witness was threatened, allegedly by Cudjoe. This new evidence, therefore, served as a predicate for the government to advocate for the additional obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1.

[2]One section of the plea agreement, apart from the provision cited above, reserves the right to "take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered." Because new facts were developed, we need not decide whether a reasonable interpretation of the agreement would necessitate new facts before the government could advocate for sentencing enhancements not specifically mentioned in the plea agreement.

Cudjoe argues the sentencing enhancements, advocated for by the government, increased the likelihood that the court would sentence Cudjoe in excess of thirty years, thus breaching the government's agreement to stand mute. This argument is belied by Cudjoe's understanding of the agreement at the time of his change of plea hearing. First, the government reiterated that it believed Cudjoe should be assigned a leadership role enhancement and an obstruction of justice enhancement. Cudjoe's attorney specifically recognized this position and stated, "I do not anticipate at the time of sentencing there would be an objection" to the enhancements. Thus, he anticipated that the government would advocate for these enhancements. Second, when Cudjoe filed objections to the PSR, he made legal challenges that the government was entitled to rebut. Cudjoe did not object to the government calling witnesses to establish the predicate for the enhancements. Therefore, we conclude Cudjoe's reasonable understanding of the plea agreement included the proposition that the government would seek and argue for these enhancements.

**C . Advocating for Sentence in Excess of Thirty Years**

Following the testimony of five witnesses, the government summarized its case for sentencing Cudjoe. The AUSA stated:

> [w]hile 360 months to life may seem extensive, the government certainly believes that given his history, given his character, given his choices, and given his drug dealing, gun carrying and firing personality, that this Court should strongly consider a penalty that will protect society from him in any and all future events.

-13-

This statement is irreconcilable with the government's promise to refrain from advocating for a sentence in excess of thirty years. The government explicitly proffers a sentence in excess of thirty years and asks the court to protect society in *all* future events, clearly suggesting a life sentence. This conduct violated both the letter and the spirit of the plea agreement. As the Supreme Court explained in *Santobello v. New York*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 257, 262 (1971). The record suggests this concession from the government—standing mute on Cudjoe's request for a thirty-year sentence—was vital to Cudjoe's willingness to enter into the plea agreement. The government failed to fulfill its promise to Cudjoe, thereby materially breaching the plea agreement.[3]

Based on the government's breach, Cudjoe asks this court to reduce his sentence to thirty years. Cudjoe has not, however, offered any precedent indicating such relief is appropriate. Instead, "[r]esentencing is the typical remedy for the breach of a plea agreement." *United States v. VanDam*, 493 F.3d 1194, 1206 (10th Cir. 2007).[4] Furthermore, resentencing appears to be the most

---

[3]As we thoroughly explained in *United States v. VanDam*, harmless error analysis is antithetical to a material breach of a plea agreement. 493 F.3d 1194, 1202-06 (10th Cir. 2007). As such, we decline to analyze the government's breach for harmless error.

[4]Cudjoe has not sought to withdraw his guilty plea. Where a defendant has
(continued...)

appropriate remedy in this case. The plea agreement did not ensure Cudjoe that his sentence would be limited to thirty years; only that the government would not advocate for a sentence in excess of thirty years. Thus, we order specific performance on that promise at resentencing. "In conformity with Supreme Court precedent, we therefore remand for resentencing by a different judge." *United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007); *see also Santobello*, 404 U.S. at 263 (noting that on remand, "petitioner should be resentenced by a different judge").

## IV. Conclusion

A defendant waives numerous constitutional rights when he enters into a plea agreement with the government. *See Hem v. Maurer*, 458 F.3d 1185, 1190-91 (10th Cir. 2006). As part of this bargain, the government must stay faithful to its promises to the defendant. Where, as here, the government falls short of its promise, a correction is required to "preserv[e] the integrity of the criminal justice process, and the public's faith in this integrity." *VanDam*, 493 F.3d at

---

[4](...continued)
sought such a remedy, this court usually "remand[s] the case to the district court for its determination as to whether defendant should be resentenced by a different judge or should be allowed to withdraw his guilty plea." *United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007). Because Cudjoe has not sought this remedy and it is available only when the breach is "particularly egregious or intentional," *United States v. Brye*, 146 F.3d 1207, 1213 (10th Cir. 1998), we need not consider it.

1204.  We therefore **reverse** Cudjoe's sentence and **remand** for resentencing before a different judge.