FILED
United States Court of Appeals
Tenth Circuit

June 5, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

MARCUS D. OAKES,

  Defendant - Appellant.

No. 11-6005

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:10-CR-00154-F-3)**

---

Carolyn L. Merritt, Oklahoma City, Oklahoma, for Defendant - Appellant.

Debra W. Paull, Assistant United States Attorney, (Sanford C. Coats, United States Attorney, Virginia L. Hines, Assistant United States Attorney, and Leslie M. Maye, Assistant United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Upon entering a plea agreement with the government, Defendant Marcus D. Oakes pleaded guilty in the United States District Court for the Western District of Oklahoma to one count of distributing cocaine base. At the sentencing

hearing, however, the government breached its promise in the plea agreement not to oppose Defendant's request that his sentence be concurrent with a prior federal sentence, and the district court sentenced him to 37 months' imprisonment to run consecutively to the other sentence. When the breach was brought to the court's attention a few minutes later, the court struck from the record the improper part of the government's argument but resentenced Defendant to the same consecutive sentence.

On appeal Defendant contends that the breach requires that his sentence be vacated and resentencing be set before a different judge. We have jurisdiction under 28 U.S.C. § 1291 and affirm. Defendant does not seek, and we would not order, that he be allowed to withdraw his plea. Therefore, the sole remedy for the government's breach is resentencing. Ordinarily, we would order resentencing before another judge. But a defendant can choose to be resentenced before the same judge, that choice can properly be made by defense counsel, and defense counsel made that choice below. Hence, there is no further remedy available for Defendant on direct appeal.

I.    BACKGROUND

Defendant was indicted on April 20, 2010, on one count of distributing cocaine base and one count of conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base. The distribution charge alleged an offense on November 14, 2008. The alleged conspiracy lasted from November

2004 to April 2009. Defendant agreed to plead guilty to the distribution count in return for the government's promise to dismiss the conspiracy charge and not to object to his request that his sentence be concurrent with his sentence for a prior federal conviction on firearms charges.

The probation office's presentence report revealed Defendant's disturbing past. Although only 23 years old, he already qualified for a criminal-history category of V. His most recent conviction was a guilty plea in federal court to brandishing a firearm during a crime of violence on January 17, 2009, for which the sentence was 84 months' imprisonment. His other adult convictions were for offenses that included a state firearm-possession offense in January 2007 and a state drug-trafficking offense in August 2006. He also had several convictions for minor offenses, and he had pleaded no contest or guilty to juvenile charges on five different occasions. He had been reported to be a member of the 107 Hoover Crips gang. The unchallenged calculation under the sentencing guidelines placed Defendant's total offense level at 13, resulting in an advisory guideline range of 30 to 37 months' imprisonment.

Aside from mentioning two letters that Defendant had submitted to the court, defense counsel's sole mitigation comments at sentencing related to Defendant's request that his sentence be concurrent with his prior federal sentence. He argued:

Judge, the only issue that I would ask the Court to consider in this case is to run the sentence concurrent with Mr. Oakes' previous federal sentence. I'm sure the Court doesn't remember, but in perhaps going through the docket sheet in this case, I had previously filed a motion to dismiss this case based upon what I thought was the government's improper conduct in a breach of a plea agreement of that first federal case of Mr. Oakes. And at that point in time, I addressed the Court and the Court had—we had a hearing and the Court overruled my motion.

But I think, Judge, the facts of that motion [were] simply that Mr. Oakes had pled guilty to a federal offense while this case was still out there. These acts that he pled guilty to here happened prior to his federal case that he's serving time on now. So I think based upon that type of situation, this Court certainly can and pursuant to Section 5G1.3 can run a sentence concurrent with his previous federal sentence.

I would ask that in this case that the Court consider that based upon all the facts known to this Court and that I think that would be a fair or at least a partial time of sentence—partially run part of that time concurrent and I think that the Court will address in those that on his previous federal sentence he will be serving enough time that he will meet all the requirements of 3553. He has enough time in that other case that he will, in fact, have time to be rehabilitated, have time to get into programs in the federal system, and will have a fair chance when he gets out to be a productive member of society.

R., Vol. 3 at 34–35 (Tr. of Sentencing Proceedings at 5–6, *United States v. Oakes*, No. 10-154 (W.D. Okla. 2011)).

In response the prosecutor, who was not the one who had signed the original plea agreement, summarized Defendant's criminal history, asserted that Defendant could have protected himself from this prosecution by disclosing, rather than denying, his drug activities when interviewed during the prosecution of his prior federal offense, and then concluded:

-4-

When considering what sentence to give this defendant, 30 to 37 being the range of punishment according to the guidelines, I would submit to the Court that although the defendant says the time period that he has left in prison is long enough to be rehabilitated, it is not long enough for that community to recover from the many years of being ruled by this defendant, his brothers, and the 107 Hoover Crips.

It is for that reason that I respectfully request the high end of the guidelines and *a sentence that runs consecutive to the time that the defendant is presently serving.*

*Id.* at 39 (emphasis added). The district court imposed a consecutive sentence, explaining:

Having carefully considered all of the circumstances, I conclude not only that a sentence at the high end of the advisory guidelines is appropriate in this case but that the sentence ought to run consecutive to any other sentence that the defendant is serving. I do intend to make the term of supervised release in this case concurrent with the four-year term in Criminal 09-81, but the sentence of incarceration in this case will be consecutive.

Mr. Oakes, to cut to the chase, you're a dope dealer. You're a gang banger. You have fathered four children out of wedlock. None of those things cut in your favor. And none of those things make the Court—give the Court any inclination to show lenience.

Now, I suppose in one sense I have shown lenience. I could depart upward and I could give you a term of 20 years. I elect to stay within the guidelines, but the appropriate sentence in this case is a sentence at the high end of the guidelines.

*Id.* at 41.

Defense counsel had not noticed the prosecutor's breach of the plea agreement and raised no objection during the hearing. But Defendant did notice and informed his attorney while everyone was still in the courthouse. Defense

counsel notified the court, which then reconvened the proceedings. After reciting what had happened, defense counsel said:

> So I think that the only—the only thing short of a motion to re-sentence him based upon a breach of the government plea agreement would probably be the adequate way to do that, but I think since we're all here in court today, the record and with you, I feel comfortable that you can address that issue and perhaps—I know you're not a hundred percent persuaded by the government's argument concerning the sentence nor are you mine. But in this case, Judge, that provision in there was very important at the time we entered our plea agreement. We knew at that point in time and it was after our hearing we had concerning my motion to dismiss based upon the government's action on the original plea agreement that we felt it was important and the government didn't object to my request at that point in time to run his sentence concurrent.
>
> Now, nothing happened ever since then to change the government's position. Everything went forward, no objections. We didn't object to any pre-sentence report. Everything went steady flow as the agreement that Ms. Maye and I and Mr. Oakes made on that day. And I think that it is implicit in the fact that when I informed Ms. Maye that we will request to have that sentence run concurrent, by her not objecting to my request is very important.
>
> I think that without an objection that the Court could consider our request as reasonable and I would ask this Court to re-sentence Mr. Oakes to the term of 37 months that you invoked. However, I would ask that you run that concurrent with case number CR-09-81-L or whatever provisions you think, Judge, as we sit here today in the box that I feel like I've kind of put us in that is fair to Mr. Oakes concerning his sentence.

*Id.* at 45–46. The prosecutor acknowledged the breach and apologized.

The court thanked Defendant and his counsel, stating that "otherwise, there quite possibly could have been a remand for re-sentencing," as in a prior case before the court. *Id.* at 47. It then explained why it would impose the same sentence, despite the seriousness of the prosecutor's breach:

-6-

The facts in this case are quite simply that I somewhat reluctantly acquiesced in the government's request for a guideline sentence. I seriously considered varying upward from 37 months. To put it mildly, I was not at all satisfied that a 37-month sentence was adequate to satisfy the statutory objectives of sentencing, even as a consecutive sentence. I came very close to departing upward in this case about 20 minutes ago. And even though I acquiesced in the government's request for a guideline sentence, albeit reluctantly, I can assure all concerned that there is not a chance that I would have acquiesced in any request, opposed or not, for a concurrent sentence for the reasons that I mentioned earlier today.

The offense conduct in this case is entirely separate from the offense conduct in Judge Leonard's case. And even with—even without the government's argument, there is no chance at all that I would have run this sentence concurrent with the sentence in the 2009 case before Judge Leonard.

Now, let there be no doubt, by making the argument for a consecutive sentence in this case this morning, the government breached the plea agreement. The Court of Appeals made it clear in *United States v. Kelvin Scott* that this Court must take that matter seriously, as did the Court of Appeals in that case.

The government's argument in this case this morning for a consecutive sentence is stricken. Free of any influence of the government's argument for a consecutive sentence, I reaffirm that the 37-month sentence in this case shall run consecutive to the sentence in the 2009 case.

*Id.* at 47–49.

## II.    ANALYSIS

There is no dispute that the prosecutor breached the plea agreement. The only issue is whether the district court's actions at the reconvened hearing provided an adequate remedy. The Supreme Court has identified two possible remedies for a breach of a plea agreement: (1) "specific performance of the agreement on the plea," which would mean resentencing at which the government

says what it has promised to say, or (2) "the opportunity to withdraw [the defendant's] plea of guilty." *Santobello v. New York*, 404 U.S. 257, 263 (1971). "[T]he choice of remedy rests with the court rather than the defendant." *United States v. VanDam*, 493 F.3d 1194, 1206 (10th Cir. 2007).

Although there are occasions when the appropriate remedy for breach of a plea agreement is to permit the defendant to withdraw the plea, *see United States v. Brye*, 146 F.3d 1207, 1213 (10th Cir. 1998) ("When the government's breach is particularly egregious or intentional, we will allow defendant to withdraw the guilty plea."); *United States v. Cooper*, 70 F.3d 563, 567 (10th Cir. 1995) (permitting withdrawal of plea), we ordinarily require only resentencing when the breach is an improper statement by the prosecutor at sentencing, *see, e.g.*, *VanDam*, 493 F.3d at 1206 ("Resentencing is the typical remedy for the breach of a plea agreement."); *United States v. Cudjoe*, 534 F.3d 1349, 1356 (10th Cir. 2008) (following *VanDam*).

Because Defendant does not seek to withdraw his plea, and the breach by the prosecutor was not the sort of error that would mandate withdrawal, the sole remedy available here was resentencing. *See Cudjoe*, 534 F.3d at 1356 n.4. And, in our view, the reconvened hearing in district court amounted to a resentencing. All the essentials of a resentencing were present. The prosecutor apologized for her error, the court struck the prosecutor's prior improper statement, and the court explained why it would impose the same sentence as before despite the change in

-8-

the government's position. Defendant complains that the court did not formally invalidate his prior sentence before imposing the same sentence. But the law is not so wedded to formalism.

There remains, then, only the question whether the original sentencing judge could properly conduct the resentencing. In this context, "the general rule [is] that resentencing should take place in front of a different judge." *VanDam*, 493 F.3d at 1206. And Defendant contends on appeal that he must be sentenced by another judge, one who never heard the prosecutor's improper argument for consecutive sentences. The general rule requiring a new judge is not, however, a rigid one. A defendant may be likely to get a more favorable sentence in resentencing proceedings before the same judge than before other judges in the district. Thus, we have honored the request in a defendant's brief on appeal that the resentencing be by the original judge. *See id.*

In the present case it is not disputed that defense counsel requested that the same judge conduct the resentencing.[1] What Defendant challenges is his

_____

[1] Counsel stated:

> So I think that the only — the only thing short of a motion to re-sentence him based upon a breach of the government plea agreement would probably be the adequate way to do that, but *I think since we're all here in court today, the record and with you, I feel comfortable that you can address that issue* and perhaps—I know you're not a hundred percent persuaded by the government's argument concerning the sentence nor are you mine. . . .
> *I think that without an objection that the Court could consider*
>
> (continued...)

attorney's authority to make that request on his behalf. He asserts that only he could make the request and that he did not personally, knowingly, and intelligently waive his right to resentencing before another judge. We reject the argument.

Our conclusion follows from our understanding of the relative authority of defense counsel and Defendant to choose the resentencing judge. Defendant is correct that some rights can be waived only if the defendant personally consents. *See Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988) (noting the existence of "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client"). "A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks omitted); *see* Wayne R. LaFave et al., Criminal Procedure § 11.6(a), at 776 (3rd ed. 2007) (describing the difference between "strategic" decisions that defense counsel has authority to make and decisions that

---

[1](...continued)
*our request as reasonable and I would ask this Court to re-sentence Mr. Oakes to the term of 37 months that you invoked. However, I would ask that you run that concurrent with Case Number CR-09-81-L* or whatever provisions you think, Judge, as we sit here today in the box that I feel like I've kind of put us in that is fair to Mr. Oakes concerning his sentence.

R., Vol. 3 at 45–46 (Tr. of Sentencing Proceedings at 16–17, *United States v. Oakes*, No. 10-154 (W.D. Okla. 2011) (emphasis added)).

-10-

must be made personally by defendant).  "These four decisions naturally reside with the defendant because they implicate the two most basic tenets of our legal system—the opportunity to have a day in court and the opportunity to have a jury of peers."  *United States v. Washington*, 198 F.3d 721, 724 (8th Cir. 1999).

The Supreme Court has not identified any additional decisions as the exclusive right of the defendant.  Although it has not explicitly stated that it will go no further, we need not determine the precise outer boundaries of counsels' authority because the Court has made clear that the choice of judge is a tactical decision left to counsel.  In *Gonzalez v. United States*, 553 U.S. 242, 243 (2008), the Court considered "whether it suffices for counsel alone to consent to [a magistrate judge rather than an Article III judge] presiding over *voir dire* and jury selection or whether the defendant must give his or her own consent."  It held that the choice was counsel's.  It first provided general reasons for giving counsel authority over most decisions:

> Giving the attorney control of trial management matters is a practical necessity.  The adversary process could not function effectively if every tactical decision required client approval.  The presentation of a criminal defense can be a mystifying process even for well-informed laypersons.  This is one of the reasons for the right to counsel.  Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial.  These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is

-11-

designed to promote. In exercising professional judgment, moreover, the attorney draws upon the expertise and experience that members of the bar should bring to the trial process. In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume. To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical.

*Id.* at 249–50 (citations and internal quotation marks omitted). Then turning to the specific decision at issue in the case before it, the Court explained: "A magistrate judge's or a district judge's particular approach to *voir dire* both in substance—the questions asked—and in tone—formal or informal—may be relevant in light of the attorney's own approach. The attorney may decide whether to accept the magistrate judge based in part on these factors." *Id.* at 250; *see United States v. Gamba*, 541 F.3d 895, 901 (9th Cir. 2008) (lawyer could consent to magistrate judge's presiding over closing arguments because tactical and strategic reasons informed the decision). *Gonzalez* is consistent with the widely accepted view that the decision whether to strike a prospective juror during jury selection is one for defense counsel. *See* ABA Standards for Criminal Justice: Defense Function § 4-5.2(b) (recognizing the decision about "what jurors to accept or strike" as a strategic or tactical one); *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996) (citing ABA standard with approval); *Alvord v. Wainwright*, 469 U.S. 956, 960 n.4 (1984) (Marshall, J., dissenting from denial of certiorari petition) (citing ABA standard with apparent approval).

-12-

The decision whether to proceed with resentencing before a new judge or the original judge is not a matter of legal expertise. But a lawyer is much better positioned than the client to make that choice. The lawyer's experience can provide insights into which judges are the most severe and which the most lenient in sentencing for this offense, for this type of defendant, etc. The lawyer can better judge whether the sentencing judge was uncertain about the original sentence or whether the judge is likely to reduce the sentence as a sanction against the prosecution. Consultation with the client may be advisable but the client is unlikely to provide useful information and, more importantly, counsel may be unable to convey more than his conclusions about the best way to proceed.

We therefore hold that Defendant is bound on direct appeal by his counsel's decision to proceed with the same judge. We express no view on whether he may have an ineffective-assistance-of-counsel claim on collateral review.

## III.  CONCLUSION

We AFFIRM the sentence of the district court. We DENY the government's motion to enforce the appeal waiver in the plea agreement.

11-6005, United States v. Oakes

**LUCERO,** J., dissenting in part and concurring in part

In the majority's view, this case is about which judge may conduct a resentencing under Santobello, and whether defense counsel alone may elect to forgo judicial reassignment. In my view, the question presented is far more substantial. This case requires us to decide if counsel can singlehandedly waive a defendant's right to obtain the benefit of his constitutional plea bargain—a right that is inextricably intertwined with the rights waived at the time of entry of a guilty plea. I consider it beyond dispute that the decision to hold the prosecution to its promise belongs to the defendant, not to the whim of counsel.

**I**

Plea bargains cannot be "unilaterally broken with impunity or without consequence." United States v. Stemm, 847 F.2d 636, 637 (10th Cir. 1988). Any promises the government makes in a plea agreement "must be fulfilled to maintain the ;1223;1223integrity of the plea." United States v. Werner, 317 F.3d 1168, 1170 (10th Cir. 2003). Accordingly, when the government breaches a plea agreement, this court remands for one of two possible remedies: specific performance by the government or withdrawal of the defendant's guilty plea. Santobello v. New York, 404 U.S. 257, 263 (1971); Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995). The former remedy is sometimes described as

resentencing, and typically occurs before a different judge.[1]  See, e.g., Santobello, 404 U.S. at 263.

According to the majority, the reconvened hearing in district court amounted to specific performance of Oakes' plea agreement.  (Majority Op. at 8.)  But specific performance of a plea deal requires that "the Government . . . fully comply with the agreement."  Puckett v. United States, 556 U.S. 129, 137 (2009).  Given this requirement and the nature of the government's breach, the majority's position is untenable.

There is no question that the prosecutor's advocacy breached the government's obligation under the plea agreement.  In exchange for Oakes' guilty plea, the government agreed not to object to Oakes' request for concurrent sentencing.  At sentencing, however, the prosecutor urged the court to impose a consecutive sentence, arguing that the time remaining on Oakes' previous sentence was "not long enough for th[e] community to recover from the many years of being ruled by this defendant, his brothers, and the 107 Hoover Crips."

At issue is how best to interpret what followed.  By the time Oakes alerted his attorney of the breach, the court had already sentenced Oakes and recessed the sentencing hearing.  Upon being informed of the plea agreement issue, the judge "resumed" the proceeding, and defense counsel stated that he "fe[lt] comfortable"

---

[1] The vast majority of circuits mandate judicial reassignment prior to resentencing.   See United States v. VanDam, 493 F.3d 1194, 1206 n.8 (10th Cir. 2007) (collecting cases).  This circuit does not.  Id. at 1206.

with the original sentencing judge addressing the issue "here in court today." The court responded that "other than either acknowledging or denying the breach of the plea agreement," there was "not much that the government c[ould] say at this point." This led the prosecution to apologize and explain that it had not intended to breach the plea agreement. Following this apology, the court "struck" the prosecutor's problematic remarks and "reaffirmed" its decision from minutes earlier, proclaiming itself "free of any influence" from the prosecutor's advocacy in violation of the plea agreement. Under the majority's view, these events satisfied the "essentials of a resentencing," as contemplated by Santobello. (Majority Op. at 8.)

I fail to see how anything resembling specific performance of the plea agreement occurred below. Certainly, the judge's actions could not have constituted specific performance by the government. As Santobello makes clear, a judge's "state[ment] that the prosecutor's [improper sentencing] recommendation did not influence him," is insufficient as a remedy. Santobello, 404 U.S. at 499. Moreover, under Santobello—and, indeed, under basic contract principles—it is the breaching party who must rectify the breach by specifically performing an agreement. Id.

Having already done what it agreed not to do, it is unclear how the prosecution in this case could "fully comply with the agreement" absent a new proceeding. Puckett, 556 U.S. at 137. Honoring the court's request not to "get

-3-

into advocacy," the prosecutor merely apologized after the violation of the plea agreement came to light.   Contrition, however, is not a cognizable remedy under Santobello.  404 U.S. at 499.  As the Court noted in that case, "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done.  That the breach of agreement was inadvertent does not lessen its impact."  Id.  Indeed, if responsibility for a plea obligation could be evaded through mere apology, the government would have little incentive for upholding its promises in any context.  See id. at 499 (Douglas, J. concurring).  To specifically perform the plea agreement, the prosecution needed to do more.

The majority misses this point by focusing on whether the judge could properly conduct Oakes' resentencing.  I do not doubt that, had Oakes so requested on appeal, we might have remanded this case for the original judge to preside over a new hearing in which the prosecutor did not contest Oakes' request for concurrent sentencing.  Such a result would be on all fours with United States v. VanDam.  See 493 F.3d at 1206 (honoring defendant's request "that the government be required to fulfill its promise in front of the same sentencing judge").  In that case, we ordered the original judge to preside over a new hearing in which the government specifically performed its plea obligation by recommending a sentence at the low end of the defendant's Guidelines range.  Id.

at 1206-07.  Eschewing judicial reassignment therefore did not deprive  VanDam of his right to a remedy.

Oakes, however, has not received either remedy endorsed by <u>Santobello</u>. We must decide if this is acceptable given counsel's request that the district court "resentenc[e]" Oakes on the spot.  In other words, may counsel alone waive a defendant's right under <u>Santobello</u> to obtain the benefit of his constitutional bargain?

**II**

"What suffices for waiver depends on the right at issue." <u>New York v. Hill</u>, 528 U.S. 110, 114 (2000).  For waiver of some rights, agreement by counsel is sufficient as a matter of "practical necessity."  <u>Gonzalez v. United States</u>, 553 U.S. 242, 249 (2008).  Other rights, however, "are so important that an attorney must seek the client's consent in order to waive the right." <u>Id.</u> at 250 (citation omitted).  These include a defendant's right to "'plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" <u>Id.</u> at 251 (quoting <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004)).  In my view, the right to a remedy under <u>Santobello</u> falls within the latter category, and cannot be waived by counsel without consent.

Ours is increasingly "a system of pleas, not a system of trials." <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1407 (2012).  Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. <u>Id.</u>  If

-5-

defendants lose faith that the government will uphold its promises, this entire apparatus could come to a crashing halt.

Thus, as courts have frequently emphasized, our criminal justice system requires that defendants who plead guilty receive the benefit of their plea bargains. See e.g., Santobello, 404 U.S. at 261-63; United States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008); Van Dam, 493 F.3d at 1202-04; Werner, 317 F.3d at 1169-70; Allen, 57 F.3d at 1534; Stemm, 847 F.2d at 637. We have explained that a "prosecutor's material breach of a plea agreement undermines the efficacy, and probity, of the criminal justice ;6070;6070system. It also erodes public confidence in the legitimacy of this ;6082;6082system." VanDam, 493 F.3d at 1203 -1204. Ensuring that a defendant receives specific performance or rescission following a breach is therefore essential to "preserv[ing] the integrity of the criminal justice process, and the public's faith in its integrity." Id. at 1204.

Guaranteeing the integrity of plea bargains is also of great personal concern to individual defendants. When a defendant enters into a plea agreement, he waives several fundamental constitutional entitlements. Santobello, 404 U.S. at 500 (Douglas, J., concurring). These include the right to a jury trial, the right to confront one's accuser, the right to present witnesses in one's defense, and the right to put the government to its burden of proving guilt beyond a reasonable doubt. Id. A defendant waives these rights solely because he expects that the

-6-

government will fulfill its promises in return. Allowing counsel to sacrifice such valuable consideration to a defaulted bargain is fundamentally unfair.

The First Circuit adopted a similar rationale in United States v. Kurkculer, 918 F.2d 295 (1st Cir. 1990). In Kurkculer, as in the case at bar, the prosecution violated a plea agreement at sentencing. Id. at 297. On appeal, the government maintained that the defendant had waived his right to invoke Santobello, but the court rejected this argument because it found that Kurkculer did not "knowingly and voluntarily waive the right to a remedy." Id. at 300. Waiving a Santobello remedy, the court reasoned, requires "reaffirm[ing] the defendant's waiver of the rights originally waived by pleading guilty." Id. I agree. Given the gravity of a plea breach, I would hold that a defendant must knowingly and voluntarily consent before remedies for breach are waived.[2]

## III

A defendant cannot be required to accept a defaulted plea bargain without his knowing consent. Because it is not possible to infer from the appellate record whether Oakes consented to waive his rights to either specific performance or rescission of his plea deal, I would remand to allow the district court to make this

---

[2] In addition, the manner in which a defendant proceeds in the face of a defaulted plea bargain will often turn on the role the particular breached promise played in the defendant's decision to plead guilty. Thus, unlike a purely tactical choice, such as between a magistrate or Article III judge, (see Majority Op. at 11), the defendant, rather than his attorney, will often have superior insight into the decision.

-7-

determination.  I join in the denial of the government's motion to enforce the

appeal waiver in the plea agreement.